**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| RYAN O'DELL, | : |
| | : |
| Plaintiff, | : Civil Action No. 23-cv-1378 |
| | : |
| v. | : **COMPLAINT FOR VIOLATIONS OF** |
| | : **SECTIONS 14(a) AND 20(a) OF THE** |
| VOLTA INC., ELI AHETO, VINCE | : **SECURITIES EXCHANGE ACT OF** |
| CUBBAGE, MARTIN LAUBER, | : **1934** |
| KATHERINE J. SAVITT, BONITA C. | : |
| STEWART, and JOHN J. TOUGH, | : **JURY TRIAL DEMANDED** |
| | : |
| Defendants. | : |

---

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Volta Inc. ("Volta or the "Company") and the members Volta's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed acquisition of Volta by affiliates of Shell plc ("Shell").

2. Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on February 8, 2023 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders.  The Proxy

Statement recommends that Company stockholders vote in favor of a proposed transaction whereby SEV Subsidiary, Inc. ("Merger Sub"), a wholly owned direct subsidiary of Shell USA, Inc. ("Shell USA"), will merge with and into Volta with Volta becoming s wholly owned subsidiary of Shell USA (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on January 8, 2023 (the "Merger Agreement"), each Volta stockholder will receive $0.86 in cash (the "Merger Consideration") for each Volta share owned. Shell plc is the ultimate parent company of Shell USA.

3. As discussed below, Defendants have asked Volta's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, Raymond James & Associates, Inc. ("Raymond James") in support of its fairness opinion.

4. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Volta's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Plaintiff resides in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Volta stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Eli Aheto has served as a member of the Board since October 2016.

11. Individual Defendant Vince Cubbage has served as a member of the Board since March 2022 is the Company's Interim Chief Executive Officer.

12. Individual Defendant Martin Lauber has served as a member of the Board since June 2020.

13. Individual Defendant Katherine J. Savitt has served as a member of the Board since December 2018.

14. Individual Defendant Bonita C. Stewart has served as a member of the Board since March 2021.

15. Individual Defendant John J. Tough has served as a member of the Board since May 2019.

16. Defendant Volta is a company incorporated under the laws of the State of Delaware and maintains its principal offices at 155 De Haro Street, San Francisco, California 94103. The Company's stock trades on the New York Stock Exchange under the symbol "VLTA."

17. The defendants identified in paragraphs 10-15 are collectively referred to as the "Individual Defendants" or the "Board."

18. The defendants identified in paragraphs 10-16 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.     The Proposed Transaction**

19. Volta is an industry-leading electric vehicle ("EV") charging and media company. Volta's unique network of charging stations powers vehicles and drives business growth while accelerating a clean energy future. Volta delivers value to site partners, brands, and consumers by installing charging stations that feature large-format digital advertising screens located steps away from the entrances of popular commercial locations. Retailers can attract and influence foot traffic, advertisers can precisely target audiences, and EV drivers can charge their vehicles seamlessly as they go about their daily routines. Volta's extensive network leverages its proprietary PredictEV® platform, which uses sophisticated behavioral science and machine learning technology to help commercial property owners, cities, and electric utilities plan EV infrastructure intelligently, efficiently, and equitably.  The Company is headquartered in San Francisco, California.

20. On January 18, 2023, the Company announced the Proposed Transaction:

4

**New York, NY (January 18, 2023)** -- Volta Inc. (NYSE: VLTA) today announced the execution of a definitive merger agreement under which Shell USA Inc., a subsidiary of Shell plc (NYSE: SHEL), will acquire Volta in an all-cash transaction valued at approximately $169 million. The transaction brings Volta's powerful dual charging and media network to Shell's established brand and seeks to unlock robust, long-term growth opportunities in electric vehicle ("EV") charging.

Under the terms of the merger agreement, Shell USA Inc. will acquire all outstanding shares of Class A common stock of Volta at $0.86 per share in cash upon completion of the merger, which represents an approximate 18 percent premium to the closing price of Volta stock on January 17, 2023, the last full trading day prior to the announcement of the transaction.

Vince Cubbage, Interim Chief Executive Officer, said, "The shift to e-mobility is unstoppable, and Shell recognizes Volta's industry-leading dual charging and media model delivers a public charging offering that is affordable, reliable, and accessible. While the EV infrastructure market opportunity is potentially enormous, Volta's ability to capture it independently, in challenging market conditions and with ongoing capital constraints, was limited. This transaction creates value for our shareholders and provides our exceptional employees and other stakeholders a clear path forward."

Cubbage continued, "Both Volta and Shell have a demonstrated ability to meet the changing needs of customers, and this acquisition

will bring that experience together to provide the options that are needed as more drivers choose electric."

This acquisition builds on the momentum in electric mobility by combining one of the leading EV charging and media companies in the U.S. with one of the world's largest energy suppliers. The transaction provides the opportunity to unlock Volta's significant signed pipeline of charging stalls in construction or evaluation and capture the seismic EV charging market opportunity. Following the completion of the transaction, there will be no immediate change in driver experience, Volta Media™ Network capabilities available to advertisers, or services provided to commercial properties and retail locations.

As part of the agreement, an affiliate of Shell will provide subordinated secured term loans to Volta to bridge Volta through the closing of the transaction.

**Approvals**

Volta's Board of Directors, having determined that the transaction is in the best interests of the company's stockholders, has unanimously approved the transaction and recommends that Volta's stockholders approve the transaction and adopt the merger agreement at the special meeting of stockholders to be called in connection with the transaction.

The transaction is expected to close in the first half of 2023. The closing of the merger is subject to the approval of Volta's stockholders, the expiration or termination of the waiting period

under the Hart-Scott-Rodino Antitrust Improvements Act and other applicable regulatory approvals, and other customary closing conditions. Upon closing of the transaction, Volta's Class A common stock will no longer be listed on any public market.

**Advisors**

Goldman Sachs & Co. LLC and Barclays Capital Inc. are serving as advisors to Volta, and Shearman & Sterling LLP is serving as Volta's legal advisor. Raymond James & Associates, Inc. provided a fairness opinion to Volta's Board of Directors. UBS Securities LLC is serving as a financial advisor to Shell, and Norton Rose Fulbright US LLP is serving as Shell's legal advisor.

\* \* \*

21.     The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that Volta's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

B.     **The Materially Incomplete and Misleading Proxy Statement**

22.     On February 8, 2023, Volta filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed

decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

23. The Proxy Statement fails to provide material information concerning financial projections by Volta management and relied upon by Raymond James in its analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and Raymond James with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Volta management provided to the Board and Raymond James. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

24. For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metric: Adjusted EBITDA, EBIT, and Unlevered Free Cash Flow, but fails to provide line items used to calculate these metrics or a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

25. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate

suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

26. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

27. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metric included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

28. With respect to Raymond James' *Selected Companies Analysis*, the Proxy Statement fails to disclose: (i) the financial multiples for each company selected by Raymond

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

James for the analysis; and (ii) the valuation multiples for Volta implied by the Common Share Transaction Consideration.

29. With respect to Raymond James' *Selected Transaction Analysis*, the Proxy Statement fails to disclose: (i) Volta's fully diluted share count as of January 13, 2023; (ii) the mean, median, minimum and maximum relative valuation multiples of the selected transactions; (iii) the publicly available information as of January 13, 2023 regarding certain selected precedent acquisition transactions that was reviewed by Raymond James for the analysis; and (iv) the valuation multiples for Volta implied by the Common Share Transaction Consideration.

30. With respect to Raymond James' *Liquidation Value Analysis*, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying the 3% transaction fee for a trustee; (ii) the inputs and assumptions underlying the $750,000 in fees for a potential restructuring per month; (iii) the net ordering liquidation value for the "Inventory" and "Machinery & Equipment" and "other" line items; and (iv) the net book values of Volta as of December 31, 2022.

31. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

32.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

33.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

34.     Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

35.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

36.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were

negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

37. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

38. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

39. The Individual Defendants acted as controlling persons of Volta within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Volta, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Volta, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

40. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to

and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

41. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Volta, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

42. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

43. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

44. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

45. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: February 17, 2023                    **MELWANI & CHAN LLP**

                                            By:  */s/ Gloria Kui Melwani*
                                            Gloria Kui Melwani (GM5661)

        1180 Avenue of the Americas, 8th Fl.
        New York, NY 10036
        Telephone: (212) 382-4620
        Email: gloria@melwanichan.com

*Attorneys for Plaintiff*